IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FEDERAL INSURANCE CO.   NO. 1:10-CV-617
  as subrogee of Fulton Financial Co.

           JUDGE CONNER

v.

HANDWERK SITE CONTRACTORS  MAGISTRATE JUDGE METHVIN
UGI CORPORATION
UGI UTILITIES, INC

REPORT AND RECOMMENDATION
ON MOTION FOR SUMMARY JUDGMENT
(Doc. 32)

Federal Insurance Company ("Federal") commenced this diversity suit for
damages to its insured's building as a result of an explosion caused by a ruptured
gas line. Named as defendants are Handwerk Site Contractors, whose backhoe
snagged the gas line during a sidewalk installation, and UGI Corporation/UGI
Utilities, Inc. (collectively referred to as "UGI"), the public utility company which
laid the pipeline in 1975 and was responsible for maintaining it. Handwerk and
UGI have filed cross-claims against each other for indemnification, each alleging
that the explosion was caused by the sole negligence of the other. Alternatively,
each seeks contribution from the other.

2

Before the court is UGI's motion for summary judgment.[1] The motion has been referred to the undersigned for a report and recommendation, and is now ripe for disposition.[2]

## ISSUES PRESENTED

UGI advances the following arguments:

1.   UGI is entitled to summary judgment on plaintiff's claims and Handwerk's cross-claims because the explosion was caused solely by the negligence of Handwerk.

2.   In the alternative, UGI is entitled to summary judgment on Handwerk's cross-claim for the costs of its emergency response and related work, as such recovery is barred in tort actions under the "economic loss doctrine."

It is noted that the parties failed to observe several of the Local Rules. UGI, for instance did not file a separate statement of material facts as required by LR 56.1, but rather placed numbered factual and legal "averments" in its motion. *See* Doc. 32. Without obtaining prior authorization, Handwerk filed a brief in opposition to the motion which exceeds the page limitation, and which fails to

---

[1] UGI filed a motion for summary judgment and supporting brief on April 14, 2011. (Docs. 32, 33). Handwerk filed a brief in opposition to the motion, along with a statement of material facts, on April 27, 2011 (Docs. 34, 35). Plaintiff filed a brief in response to the motion and statement of material facts on May 5, 2011 (Docs. 36, 37). Thereafter, UGI filed a supplemental brief on May 26, 2011 (Doc. 40) and Handwerk filed its supplemental brief on June 6, 2011. (Doc. 41).

[2] On October 14, 2011, Judge Conner referred the present motions to the undersigned. (Doc. 61).

include a certificate of word count. *See* Doc. 34 and LR 7.8 (b). The parties are

reminded that, when submitting future pleadings, they are to adhere to the Local

Rules, a copy of which is available on the court website.

## FINDINGS AND RECOMMENDATIONS

### I. Background

The facts are viewed in the light most favorable to the non-mover,

Handwerk. While the court would ordinarily include plaintiff as a non-mover since

UGI seeks dismissal of plaintiff's claims as well, plaintiff has aligned itself with

UGI for purposes of the instant motion:

> For purposes of this motion for summary judgment, Federal adopts
> those facts and legal arguments submitted by UGI in support of its
> argument that defendant Handwerk Site Contractors ("Handwerk") is
> solely liable to Federal for causing the explosion and fire at issue in
> this litigation.

Doc. 36, at 1, Plaintiff's Response to Motion for Summary Judgment.

In the spring of 2008, Handwerk entered into a contract with the Borough of

Hummelstown to replace the sidewalks, curb and storm drain along East Main

Street. Prior to commencement of construction, Handwork made the mandatory

call to "Pennsylvania One Call," a system established by the State to alert utility

providers when construction work is to be performed so they can identify and

4

mark their utility lines. 73 P.S. §176 *et seq.* In response, UGI marked the location of its utility line.

On May 21, 2008, Handwerk was using a backhoe to remove the macadam in front of a building located at 300 East Main Street. The backhoe snagged the underground gas pipe at approximately 5 inches below the surface of the macadam, causing gas to leak (Doc. 32-2, p. 34: 13–14 (deposition page 77:13–14)). Minutes later, an explosion destroyed the building in question, which was insured by plaintiff on behalf of the mortgage holder.  The present action followed.

Handwerk's cross-claim alleges that UGI negligently installed and maintained a lateral gas line less than the required depth from the surface of the street and sidewalk. UGI responds that the explosion was caused solely by the negligence of Handwerk, which failed to use prudent techniques to ascertain the exact location of the gas line.

 Several other cases have been filed in state court related to these facts. On November 23, 2010, the Court of Common Pleas of Dauphin County consolidated eleven related cases into one action.[3]

---

[3] The consolidated action is found at 2010-CV-1519-CV in the docket of the Court of Common Pleas of Dauphin County. The consolidation included a state case filed by

(continued...)

5

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving

---

[3](...continued)
plaintiffs against the same defendants in the present action.  That claim was subsequently withdrawn in March, 2011.

6

party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid or obtain summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed. R. Civ. P. 56(c)(1); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court

7

may also give parties an opportunity to properly provide support or opposition.

Fed. R. Civ. P. 56(e).

## III. Discussion

### A. Pennsylvania One Call Act

The Commonwealth of Pennsylvania has established the "One Call System" to alert utility providers when construction work is performed in Pennsylvania. *See* 73 P.S. §176 *et seq*. Pursuant to the Underground Utility Line Protection Act (the "One Call Statute"), any person performing excavation or demolition work must "provide the One Call System with specific information to identify the site so that [utility] owners might provide indications of their lines." *Id*. The One Call System thus alerts utility providers, who must go to the construction site and mark the locations of underground utility lines. 73 P.S. §§ 177 (5), 180 (2.2), 178 (1.2).

The Common Ground Alliance is a nonprofit corporation created pursuant to the issuance of the United States Department of Transportation's Common Ground Task Force report in 1999. CGA's best practices recommendations are effectively incorporated into the One Call Act. *See* 73 P.S. § 184 ("Except as otherwise provided for by this act, persons shall use their best efforts to comply with the Common Ground Alliance best practices.").

8

*B. Negligence*

"[A] federal court must apply the substantive laws of its forum state in diversity actions," such as this one. *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). Therefore, Pennsylvania law applies to this dispute. Under Pennsylvania law, "[t]he mere occurrence of an accident does not establish negligent conduct." *Martin v. Evans*, 711 A.2d 458, 461 (Pa.1998). Rather, "[i]n any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pa. Turnpike Com'n*, 911 A.2d 1264, 1272-73 (Pa. 2006).

    1.    *Handwerk's duty under 73 P.S. §180 (4)*

UGI cites §180(4) of the Pennsylvania One Call Act as the basis for its claim that Handwerk failed to exercise the appropriate duty in performing work on May 21, 2008. The relevant statutory provision provides:

> It shall be the duty of each excavator who intends to perform excavation or demolition work within this Commonwealth:
>
> > (4) To exercise due care; and to take all reasonable steps necessary to avoid injury to or otherwise interfere with all lines where positions have been provided to the excavator by the facility owners pursuant to clause (5) of section 2. [73 P.S. §177]. Within the tolerance zone the excavator shall employ prudent techniques, which may include hand-dug test holes, to ascertain the precise position of such facilities.

9

> If insufficient information to safely excavate is available pursuant to clause (5) of section 2, the excavator shall employ like prudent techniques which shall be paid for by the project owner pursuant to clause (15) of this section.

73 P.S. § 180(4).

UGI contends that Handwerk's failure to hand-dig the area to discover the precise location of the utility lines constitutes a violation of its duty under §180(4). Handwerk points out that the statute does not *require* hand-digging, and that hand-digging and other non-invasive methods are not required for pavement removal under CGA's best practices. Handwerk also avers that it intended to hand-dig once the macadam was removed.

Handwerk further argues that the work it was performing at the time was not "excavation" because it did not involve moving of earth and rock, but instead removal of macadam in preparation to hand-dig to locate the utility lines. The One Call Act defines "excavation work" as follows:

> [T]he use of powered equipment or explosives in the movement of earth, rock or other material, and includes, but is not limited to, anchoring, augering, backfilling, blasting, boring, digging, ditching, drilling, driving-in, grading, plowing-in, pulling-in, ripping, scraping, trenching and tunneling, but does not include soft excavation technology such as vacuum, high pressure air or water, tilling of soil for agricultural purposes to a depth of less than eighteen inches, the direct operations necessary or incidental to the purposes of finding or extracting natural resources, political subdivisions performing minor routine maintenance up to a depth of less than eighteen inches measured from the top of the edge of the cartway or the

top of the outer edge of an improved shoulder, in addition to the
performance of incidental de minimis excavation associated with the routine
maintenance and the removal of sediment buildup, within the right-of-way
of public roads or employees of the Department of Transportation
performing within the scope of their employment work up to a depth of
twenty-four inches beneath the existing surface within the right-of-way of a
State highway.

73 P.S. § 176.

Two questions are presented by the application of §180(4) to this matter.
The first involves whether the work being performed by Handwerk constituted
"excavation" under the statute. Determination of this question involves genuine
disputes of material fact, and/or application of fact to law, and summary judgment
is therefore inappropriate.

The second and key question to be answered is whether Handwerk
employed prudent techniques in the removal of the macadam. Section 180(4)
states that, in identifying the location of utility lines, the excavator is to employ
"prudent techniques, which *may* include hand-dug test holes[.]" Clearly, absent
language such as "shall," "will," or "must," the language permits or suggests, but
does not mandate, hand-digging. Rather, the only requirement relates not to hand-
digging but to the use of prudent techniques. Inasmuch as it is the province of the
fact-finder to determine whether Handwerk employed prudent techniques in the

removal of the macadam, it cannot be concluded, at this point, that it failed to

exercise the appropriate duty of care under §180(4).

 2. *UGI's duty under 49 C.F.R. §192.361*

 Handwerk alleges in its cross-claim that the shallow depth of UGI's gas line

violated 49 C.F.R. §192.361, which governs the minimum federal safety standards

for the installation of gas pipelines. The statute provides, in pertinent part:

> Each buried service line must be installed with at least 12 inches (305
> millimeters) of cover in private property and at least 18 inches (457
> millimeters) of cover in streets and roads. However, where an
> underground structure prevents installation at those depths, the
> service line must be able to withstand any anticipated external load.

49 C.F.R. §192.361(a). Asserting that the gas line was struck within 5–6 inches of

the surface of the street, Handwerk argues UGI's installation of the gas line was

well-short of the required depth. Moreover, Handwerk cites to UGIs' operations

manual in effect at the time the line was installed that provided for 24 inches of

cover material as evidence of the duty of care owed by UGI.[4]

 In response, UGI makes two arguments. First, UGI asserts that there is no

evidence of a violation of §192.361, *i.e*, Handwerk has not presented evidence that

the gas line was not *installed* at the proper depth in 1979, only that the line was no

longer at that depth in 2008. UGI further contends that, even if there were a

---

[4] It is noted that the manual is the subject of a motion in limine by UGI.

12

violation of §192.361, Handwerk's negligence in failing to hand-dig the area to identify the precise location of the line was the sole cause of the explosion.[5]

As to UGI's first argument, Michael Logan, a Handwerk employee who was operating the backhoe at the time of the incident, testified that the gas line was approximately 5 inches from the surface at the time it was struck. Additionally, Handwerk correctly observes that there is no evidence that the depth of the gas line changed between its installation in 1979 and the explosion on 2008.[6] Nor, absent evidence indicating how a change in depth may have occurred, can a difference in the depth of the line at the time of installation in 1979 and the time of the explosion in 2008 be presumed.

Whether, as UGI contends, the sole cause of the explosion was Handwerk's failure to use prudent techniques, *to wit*., hand-digging, to ascertain the exact location or depth of the gas line, is a question not capable of resolution on summary judgment in light of the material facts in dispute. Accordingly, it is

---

[5] UGI also contends that §192.361 permits installation of lines at a depth of less than 12 inches, but does not identify what such circumstance are or that they are present in this case.

[6] To there is extent that there is any dispute as to the depth of the gas line, it is a factual question for the jury. *See Phelps v. Woodward Const. Co.*, 204 P.2d 179 (Wyo. 1949).

13

recommended that the court deny UGI's motion for summary judgment holding Handwerk solely liable for negligence in connection with the explosion.

    *3.*    *Causation*

For all the reasons discussed above, summary judgment is inappropriate on the issue of the explosion's causation. Inasmuch as all inferences must be drawn in favor of Handwerk as the non-movant, UGI is not entitled to summary judgment holding that Handwerk's alleged negligence was the sole cause of the explosion.

*C. Economic Loss Doctrine*

In the instant matter, Handwerk has made a cross-claim against UGI for alleged damages as follows:

    a.    Property damage to a truck that was on-site at the time of the explosion in an amount in excess of . . . $200.00.

    b.    Defendant Handwerk has been forced to incur expenses . . . for additional work necessitated by the incident . . . [and] associated with their (*sic*) emergency response and other work . . . in the sum of . . . $14,809.13.

(Doc. 12,¶ 23).

UGI seeks partial summary judgment on part (b) of this claim, alleging that Handwerk's claim for the costs of "emergency response and other work" is unrelated to its claim for damage to its truck, and that therefore it is barred by the economic loss doctrine.

14

The economic loss doctrine generally holds that "no cause of action should exist for negligence that causes economic loss but no property damage." *In re One Meridian Plaza Fire Litigation,* 820 F. Supp. 1460, 1473 (E.D. Pa. 1993), *vacated in part*, 1993 WL 224167 (E.D. Pa. June 14, 1993), *quoting Robins Dry Dock and Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).

> The doctrine is meant to protect a tortfeasor from tremendous liability for a single act. This is concisely explained by the court in *Stevenson v. East Ohio Gas Co., 47 Ohio Law Abs.* 586, 73 N.E.2d 200 (1946):
>
>> If one who by his negligence is legally responsible for an explosion or a conflagration should be required to respond in damages not only to those who have sustained personal injuries or physical property damage but also to every one who has suffered an economic loss, by reason of the explosion or conflagration, we might well be appalled by the results that would follow.

*Fire Litigation*, 820 F. Supp. at 1472 (*quoting Stevenson*, supra). *See also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 776 U.S. 858 (1986)(holding that the economic loss doctrine preserves important distinctions between tort law and contract law and concluding that there can be no recovery in negligence where the only injury claimed is economic loss).

An *en banc* panel of the Pennsylvania Superior Court adopted the economic loss doctrine in *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128 (Pa. Super.1989). In Pennsylvania, the economic loss doctrine precludes recovery for

economic losses in a negligence action where the plaintiff has suffered no physical injury or property damage. *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super.1985) (no cause of action lies for negligence that causes only economic loss); *Rock v. Voshell*, 397 F. Supp.2d 616, 627-28 (E.D. Pa. 2005) (applying Pennsylvania law, economic loss doctrine bars negligence and negligence per se causes of action); *Eagle Traffic Control v. Addco*, 882 F. Supp. 417, 419 (E.D. Pa.1995) (applying Pennsylvania law, economic loss doctrine applies to claims of negligent misrepresentation).

Here, Handwerk's claim for the costs of its emergency response and related work constitutes neither a personal injury nor a property loss claim, but rather a claim for purely economic losses. Inasmuch as the costs of the emergency work necessitated by the gas explosion did not flow from the damage to the truck, they are not recoverable through a negligence action. *See In re Oriental Republic of Uruguay*, 821 F. Supp. 934, 939 (D. Del. 1993) (observing that "recovery for economic loss damages can be obtained under the physical harm exception only insofar as those pecuniary losses flowed directly from the underlying physical harm."). Thus, despite the fact that both losses occurred as a result of the exploding gas line, only the damaged truck is a loss recoverable in tort, and the

16

loss for the additional emergency work may not "piggy-back" on negligence action for vehicle damage.

Accordingly, it is recommended that UGI's motion for partial summary judgment be granted on Handwerk's damages claims for emergency response work (Doc. 12, ¶ 23 (b)).

## IV. Recommendation

Based on the foregoing analysis, it is respectfully recommended that UGI's motion for summary judgment (Doc. 32) be granted in part and denied in part. Specifically, it is recommended that partial summary judgment be granted dismissing Handwerk's cross-claim against UGI for costs of emergency response and related work (Doc. 12, ¶ 23(b)), and that UGI's motion for summary judgment be denied in all other respects.

Signed on April 3, 2012.

_____
MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE