**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY** | : | **Civil Action No. 1:10-cv-617** |
| as subrogee of Fulton Financial | : | |
| Corporation, | : | **(Judge Conner)** |
|     **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HANDWERK SITE CONTRACTORS,** | : | |
| **UGI CORPORATION, and** | : | |
| **UGI UTILITIES, INC.** | : | |
|     **Defendants,** | : | |

## MEMORANDUM

Presently before the court is the Report and Recommendation (Doc. 63) of

Magistrate Judge Methvin, recommending that the motion for summary judgment

(Doc. 32) of defendants UGI Corporation and UGI Utilities, Inc. (collectively,

"UGI"), be granted in part and denied in part. Defendant Handwerk Site

Contractors ("Handwerk") filed a partial objection (Doc. 66) to Judge Methvin's

Recommendation on April 17, 2012, as did UGI (Doc. 64) on April 16, 2012.

Handwerk raises three objections to the Magistrate Judge Methvin's report,

arguing that the report fails to apply the law of Pennsylvania on the economic loss

doctrine, that there are factual questions which preclude entry of summary

judgment in favor of UGI with regard to Handwerk's economic losses, and that in

any event the court is collaterally estopped from entering summary judgment in

favor of UGI. (Doc. 67 at 1). UGI objects to Magistrate Judge Methvin's conclusion

that factual disputes preclude summary judgment, namely: (1) whether Handwerk

was engaged "excavation work" within the meaning of the Pennsylvania One Call

Act, and (2) whether the accident in this case was solely caused by Handwerk's negligence. (Doc. 64 at 3-40.

All objections have been fully briefed, and the matter is ripe for disposition. For the reasons to be discussed, the court will adopt in part and reject in part Magistrate Judge Methvin's Report and Recommendation.

## I.  Factual and Procedural Background

Summary judgment is appropriate only when "there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  Accordingly, the court will view the facts "in the light most favorable to the nonmoving party."  Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679-80 (3d Cir. 2003) (internal quotation and citation omitted).

In April of 2008, Handwerk entered into a contract with the Borough of Hummelstown for construction along East Main Street.  Specifically, Handwerk was engaged to install or replace a concrete sidewalk, concrete curb, and storm drain.  Before beginning construction, Handwerk made the requisite call to Pennsylvania One Call, in order to ascertain the location of service lines on the construction site.  Handwerk concedes that UGI correctly marked the location of the gas line on the site. (Handwerk's Response to UGI's Requests for Admissions, Doc. 32-2 ¶ 21) ("Handwerk's Admissions").  Further, Handwerk agrees that facilities owners do not, in common practice, indicate the depth of service lines when marking them in accordance with the One Call Act.  (Id. ¶ 35).  The line that UGI marked was installed on July 10, 1975. (Doc. 41-2 at 6).

An accident occurred on May 21, 2008.  While using a Case 580 backhoe, a piece of powered equipment, Handwerk's operator struck a 3/4 inch steel medium pressure gas service line.  (UGI's Requests for Admissions, Doc. 32-1 ¶¶ 1-4; Handwerk's Admissions, Doc. 32-2 ¶¶ 1-4).  The parties dispute whether the backhoe struck the line while "in the movement of earth, rock or other material." UGI asserts that is precisely what occurred, but Handwerk disagrees, and asserts that the backhoe was merely scraping macadam[1] off the surface of the roadway. (Handwerk's Admissions, Doc. 32-2 ¶ 3).  There is also a dispute as to how deep the line was buried at the time it was struck. (See Doc. 41-2 at 6).  What is not disputed, however, is that there was an explosion and fire, which damaged a building located at 300 East Main Street.

Litigation followed.  Plaintiff Federal Insurance ("Federal") brought this diversity action as subrogee of the Fulton Financial Company ("Fulton"), the holder of the mortgage lien on the 300 East Main Street property.  As the insurer of the property, Federal paid Fulton $199,735.94 as compensation for its interest in the damaged property.  Federal then brought suit against Handwerk and UGI alleging negligence, and seeking to hold them jointly and severally liable for the amount paid to Fulton, plus interest, costs and attorney's fees.  Parallel to this federal litigation are a number of state proceedings arising out of the same accident.  In an

---

[1] "Macadam" refers to "macadamized roadway or pavement," or "the broken stone used in macadamizing." WEBSTER'S UNABRIDGED NEW INTERNATIONAL DICTIONARY (3d ed. 1993).

3

order dated November 23, 2010 (Doc. 30), the court denied Handwerk's motion to dismiss/stay the proceedings (Doc. 13) on abstention grounds.  See Colorado River Water Cons. Dist. v. United States, 424 U.S. 800 (1976).

In answering Federal's complaint, Handwerk and UGI brought cross-claims against one another.  (See Handwerk Answer, Doc. 12; UGI Answer, Doc. 8). Handwerk sought contribution or indemnification from UGI on the grounds that UGI negligently constructed, installed, and maintained the gas line, specifically by installing and/or maintaining the line at too shallow a depth.  (Doc. 12 at 4-7). Handwerk also sought money damages from UGI for equipment damages and expenses incurred as a result of the explosion.  Similarly, UGI sought contribution or indemnification from Handwerk, claiming that Handwerk's negligence was the sole cause of the accident.  (Doc. 8 at 6).

On April 14, 2011, UGI moved for summary judgment (Doc. 32).  UGI argued that the accident was caused solely by the negligence of Handwerk, that UGI owed no tort duty to Handwerk with regard to the depth of the line, and that even if such duty existed, Handwerk failed to put forth evidence showing that UGI breached its duty.  (See generally Doc. 33).  In the alternative, UGI argued that Handwerk's claim for damages other than indemnification or contribution were barred by the economic loss doctrine.  (Id. at 11-14).  Reserving the right to prove UGI's liability should its motion be denied, Federal nonetheless joined UGI in arguing that Handwerk was solely liable for the explosion.  (See generally Doc. 37).

Handwerk opposed UGI's motion on various grounds. First, Handwerk argued that a genuine dispute of material fact existed as to whether it was engaged in "excavation" at the time of the accident, precluding summary judgment. Similarly, Handwerk disputed that it was required by law to have engaged in hand-digging to ascertain the precise location of the line. Handwerk also argued that UGI misstated Pennsylvania law on proximate causation and on the economic loss doctrine. (See generally Doc. 34).

On April 3, 2012, Magistrate Judge Methvin issued a Report in which she recommended that UGI's motion for summary judgment be granted with regard to Handwerk's claims for damages arising out of the emergency response and related work incurred by the explosion, as barred by the economic loss doctrine, but that UGI's motion should be denied in all other respects. Magistrate Judge Methvin specifically found that the question of whether Handwerk was involved in "excavation" as defined in the statute "involves genuine disputes of material fact, and/or application of fact to law" which precluded summary judgment. (Doc. 63 at 10). She also found that material factual disputes existed as to: (1) the reasonableness of Handwerk's decision not to employ hand-digging to identify the precise location of the line; (2) whether UGI was negligent in either installing or failing to maintain the line at a particular depth; and (3) whether UGI's conduct was a proximate cause of the explosion. (Id. at 11-13).

## II.  Standard of Review

When objections to a magistrate judge's Report and Recommendation are filed, the court must perform a *de novo* review of the contested portions of the report.  Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3 (M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)).  "In this regard, Local Rule of Court 72.3 requires 'written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections.'"  Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL 4186951, at *6 (M.D. Pa. Sept. 8, 2008)).  The Report and Recommendation in the above-captioned matter concerns a motion for summary judgment, and so the court must apply the familiar Rule 56 standard.

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.  **Statutory and Regulatory Background**

This litigation involves federal and state law governing installation, maintenance, and excavation of utility service lines.  The Pennsylvania One Call Act, 73 PA. CONS. STAT. § 176 *et seq.* ("the One Call Act" or "the Act") governs the locating and marking of utility service lines prior to construction, in order to avoid damage to the lines and the hazards that accompany such damage.  The Act uses a number of construction terms of art, and so a brief discussion defining these terms is in order.

A "facility owner" refers to the "public utility or agency, political subdivision, municipality, authority, rural electric cooperative or other person or entity who or which owns or operates a line," subject to three exceptions not relevant here. § 176. A "line" or "facility," in turn, means simply the "underground conductor or underground pipe or structure" used to provide such necessities as electricity, communications cables, water and sewage service, or any number of fuels to a building.  Id.  Here, UGI is the facility owner of the gas line that exploded.  Under the Act, an "excavator" is "any person who or which performs excavation or demolition work for himself or for another person."  Id.  An "operator" is the individual "in physical control of powered equipment or explosives when being used to perform excavation or demolition work."  Id.  And, of critical importance to

this litigation, "excavation work" is defined as "the use of powered equipment or explosives in the movement of earth, rock or other material, and includes, but is not limited to, anchoring, augering, backfilling, blasting, boring, digging, ditching, drilling, driving-in, grading, plowing-in, ripping, scraping, trenching and tunneling." Id.[2]

The Act requires facilities owners to provide the One Call System with the locations of their lines. § 177(1). Excavators are required to contact the One Call System at a specified time prior to beginning excavation or demolition work, in order to contact through the system the facility owners who have lines at the site. § 180(2.1). Upon receiving a timely request from an excavator, a facility owner must "mark, stake, locate or otherwise provide the position of the facility owner's underground lines at the site within eighteen inches *horizontally* from the outside wall of such line." § 177(5)(I) (emphasis added). The Act does not require facilities owners to mark a line's depth. This is done so as to allow the excavator to precisely

_____

[2] The Act excepts from the definition of excavation work a number of activities not relevant here, including the use of "soft excavation technology such as vacuum, high pressure air or water, tilling of soil for agricultural purposes to a depth of less than eighteen inches, the direct operations necessary or incidental to the purposes of finding or extracting natural resources, political subdivisions performing minor routine maintenance up to a depth of less than eighteen inches measured from the top of the edge of the cartway or the top of the outer edge of an improved shoulder, in addition to the performance of incidental de minimis excavation associated with the routine maintenance and the removal of sediment buildup, within the right-of-way of public roads or employees of the Department of Transportation performing within the scope of their employment work up to a depth of twenty-four inches beneath the existing surface within the right-of-way of a State highway." Id.

determine the location of the lines by "employ[ing] prudent techniques, which may include hand-dug test holes." Id. The Act imposes significant duties upon excavators, who must exercise "due care" and "take all reasonable steps necessary to avoid injury to or otherwise interfere with all lines where positions have been provided to the excavator by the facility owners." § 180(4). The Act twice makes reference to the use of hand-dug test holes by excavators to precisely locate service lines. See § 177(5)(i); § 180(4).

Operating parallel to the Act are a series of federal regulations that set minimum requirements for the installation of service lines. See 49 C.F.R. § 192.351 *et seq.* These regulations provide that "[e]ach buried service line must be installed with at least 12 inches (305 millimeters) of cover in private property and at least 18 inches (457 millimeters) of cover in streets and roads." § 192.361(a). However, the regulations provide that where the circumstances of the site prevent installation of a line at 12 or 18 inches deep, respectively, the line must still be constructed so as to "withstand any anticipated external load." Id.

With this statutory and regulatory structure in mind, the court turns now to the merits of the objections.

IV. **Discussion**

A federal court sitting in diversity is obliged to apply the substantive law of the forum state, which in this case is Pennsylvania. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Pennsylvania law, a plaintiff has the burden of establishing the elements of a

9

negligence claim by a preponderance of the evidence.  <u>Martin v. Evans</u>, 711 A.2d

458, 461 (Pa. 1998).  The elements of a negligence claim are familiar: the plaintiff

must show (1) that the defendant owed a duty of care to the plaintiff; (2) that the

defendant was in breach of that duty; (3) the defendant's breach was the proximate

cause of the plaintiff's injury; and (4) that the plaintiff suffered an actual loss or

damage.  <u>Id.</u>  The parties have each raised partial objections to the Report and

Recommendation, and the court will address each in turn.

  **A.** **UGI's Objections**

  Handwerk's theory of liability is that UGI was negligent in the construction,

installation, and maintenance of the service line, violating regulations that govern

service line installation and UGI's own internal operating procedures.  (Answer

with Cross Claim of Handwerk, Doc. 12 at 4).  Magistrate Judge Methvin concluded

that factual issues preclude summary judgment, specifically: whether Handwerk

was engaged in "excavation" as defined by the One Call Act, whether Handwerk

was negligent in failing to use hand-digging to ascertain the location of the line, and

whether the accident was caused solely by Handwerk's negligence. UGI partially

objects to Magistrate Judge Methvin's report: first, it argues that there is *no* factual

dispute regarding whether Handwerk was excavating; second, it argues that there

is no factual dispute regarding whether Handwerk was negligent because

Handwerk had the *exclusive* duty to locate the buried line; and finally, it argues that

there is no factual dispute regarding UGI's duty to bury the line at a greater depth than it was buried.

With respect to the issue of whether Handwerk was engaged in "excavation" work, the court respectfully disagrees with Magistrate Judge Methvin. The One Call Act defines "excavation work" as "the use of powered equipment . . . in the movement of earth, rock or other material . . . ." 73 PA. CONS. STAT. § 176. In its response to UGI's request for admissions, Handwerk stated that it struck the line while using the bucket of its backhoe to scrape  macadam off of the surface of the roadway. (Handwerk's Admissions, Doc. 32-2 at 4). Macadam is a roadway material composed of pulverized stone. See supra note 1. The court finds that macadam clearly constitutes "earth, rock or other material" within the meaning of the One Call Act, and that "scraping" is one of the verbs listed by § 176 that constitutes excavation work. Hence, the court holds that Handwerk was engaged in excavation work for purposes of the One Call Act, and declines to adopt Magistrate Judge Methvin's recommendation on this point.

UGI argues that, under the One Call Act and the Pennsylvania Supreme Court's decision in Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania, 985 A.2d 840 (Pa. 2009), Handwerk had the exclusive duty to ascertain the precise position of the service line. UGI's reliance upon Excavation Technologies, is, however, misplaced, and that case does not dictate the result which UGI advocates. In Excavation Technologies, the Pennsylvania Supreme Court wrote that "excavators, not utility companies, retain the duty to identify the

precise location of facilities," a statement that UGI cites for the proposition that Handwerk had the exclusive duty to prevent the explosion in this case.  Id. at 844. However, Excavation Technologies presented a situation factually distinct from that of the instant matter.

In Excavation Technologies, the court was called upon to determine whether § 552 of the Restatement (Second) of Torts imposed "liability for economic losses to a contractor caused when a gas utility company fails to mark or improperly marks the location of gas lines."  Id. at 842.  Section 552 provides a cause of action for negligent misrepresentation.  Section 552(1) states that one who "in the course of his business, profession or employment" negligently supplies false information may be held liable for damages caused by justifiable reliance on that information. Restatement (Second) of Torts § 552(1) (1977).  Section 552(2) limits the liability outlined in § 552(1) to losses suffered by the "person or one of a limited group of persons for whose benefit" the supplier provides the information, or whom he knows that the recipient intends to supply the information, or "through reliance upon [the information] in a transaction that [the supplier] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."  Id.  Finally, § 552(3) states that "[t]he liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."  Id.

The court determined that § 552 did not impose liability for economic damages on a utility provider. The court reasoned that the Pennsylvania legislature did not intend the One Call Act to extend liability for economic damages to utility companies that inaccurately marked lines, because the Act does not create a private cause of action for economic losses. 985 A.2d at 842-43. The court distinguished the case from <u>Bilt-Rite Contractors, Inc. v. Architectural Studio</u>, 866 A.2d 270 (Pa. 2005), in which it had held that a claim for economic loss against an architect was viable under § 552. A utility company, unlike an architect, is not "a professional information provider;" to the contrary, utility companies are mandated by law to provide line information with dispatch and without pecuniary gain. <u>Id.</u> at 843 (internal quotation and citation omitted).

The court also specifically declined to find liability under § 552(3) because the purpose of the One Call Act is not to protect against economic losses, but to protect against physical harm and property damage. <u>Excavation Technologies</u>, 985 A.2d at 844. The court *then* recognized that the Act places the ultimate duty to identify the location of underground facilities on the excavator. <u>Id.</u> ("[W]here a utility supplies an excavator with 'insufficient information' to locate facilities, the excavator must employ prudent techniques, which may include hand-dug test holes, to determine the precise location of underground equipment."). That is different in kind from the situation presented in this case. Here, there is no allegation that UGI misidentified the location of the lines. Rather, the allegation is that UGI was negligent in the installation and maintenance of the service line *in the first instance*,

a situation not addressed by the One Call Act. UGI would read this single remark from the Pennsylvania Supreme Court to effectively immunize a facility owner in any situation in which a service line is struck by an excavator, a result which simply is not supported by Excavation Technologies. The court therefore agrees with Magistrate Judge Methvin that UGI is not entitled to summary judgment on the grounds that Handwerk had the exclusive duty to prevent the explosion.

The court also agrees with Magistrate Judge Methvin's conclusion that a genuine dispute of material fact remains regarding whether Handwerk used prudent techniques in digging around the line, and therefore the court cannot find as a matter of law that Handwerk was negligent. The One Call Act imposes a duty upon excavators "[t]o exercise due care," and requires them to employ prudent techniques when locating service lines. § 180(4). Prudent techniques "*may include* hand-dug test holes, to ascertain the precise position of" service lines. Id. (emphasis added). However, as Magistrate Judge Methvin reasoned, the statute does not use language such as "shall" or "will" – language that would make hand-digging mandatory. Rather, the act mandates that the excavator act prudently, which *may* mean employing hand-digging to find buried lines. Therefore, whether Handwerk's decision not to engage in hand-digging was negligent is a question of fact for the jury, and is inappropriate for summary judgment.

Finally, UGI objects to Magistrate Judge Methvin's conclusion that a genuine dispute of material fact exists as to UGI's duty of care. UGI argues that the duty established by 49 C.F.R. § 192.361 regarding the depth of service lines extends only

14

to the *installation* of service lines, and does not create a continuing obligation on the part of the facility owner to *maintain* the service line at a particular depth as the surface grade changes over time.  See § 192.361(a) (stating that "[e]ach buried service line must be *installed*" to a particular depth) (emphasis added).  UGI argues that Handwerk has not put forth any evidence that the service line was installed below the required depth, but rather only that it was at a shallower depth at the time of the accident, and that Magistrate Judge Methvin improperly concluded that the depth at which the service line was installed may be inferred from evidence of its depth at the time of the accident.  (Doc. 65 at 7).

As a threshold matter, the court disagrees with UGI's argument that its duty is derived solely from the federal regulation.  Handwerk has submitted to the court a document, produced by UGI in the course of discovery, which explicates UGI's internal operating procedures regarding service line installation applicable to the instant matter, i.e., in effect when the subject service line was installed.  (See Doc. 41-3).  This document states that buried lines must have a minimum of 24 inches or as much as 36 inches of cover, depending on the composition of the surrounding ground.  (Id.)  Handwerk argues that this document, when coupled with the requirement under 49 C.F.R. § 192.361 that lines be buried at least 12 inches deep, would allow a reasonable jury to find that UGI had a duty to bury the line at a greater depth than that alleged to have been present in the case *sub judice*.

Handwerk presented circumstantial evidence of the depth at which the line was installed.  UGI stated in response to Handwerk's interrogatories that it did not

know the maximum and minimum depths at which the service line was buried as it connected the main gas line and the building at 300 East Main Street, where the line was struck. (See Doc. 35-1 at 7). However, Michael Logan, the operator of the backhoe that struck the line, stated in deposition testimony that the line was between five and six inches below the surface of the macadam when he snagged it. (See Dep. of Michael Logan, Doc. 32-2, at 49-50 (Transcript pages 137:9-138:10)). Specifically, Logan testified:

> Q: So your testimony is that your backhoe shovel was at what depth below the surface?
>
> A: Probably about – between, probably, five and six.
>
> Q: And it's your testimony that the backhoe shovel was somewhere between five and six inches deep when it snagged the gas line?
>
> A: Yes.

(Id. (Transcript page 137:2 – 137:10)). Handwerk has provided direct evidence of the depth of the line at the time of the accident, from which a jury may fairly conclude, in the absence of evidence to the contrary, that the line was *installed* at that depth. See Brown v. T.W. Phillips Gas & Oil Co., 195 F.2d 643, 645 (3d Cir. 1952) (holding that, notwithstanding an absence of direct evidence of the presence of a blow-off valve on a gas line *at the time* of a fire, a jury could presume the presence of the valve based upon un-rebutted evidence of the valve's presence months before the fire). Handwerk need not put forth direct evidence of the line's depth at installation, because "[c]ircumstantial evidence is entitled to as much weight as direct evidence, and is admissible to prove all elements of a negligence claim."

16

Fitzpatrick v. Natter, 961 A.2d 1229, 1242 n.13 (Pa. 2008). UGI's argument that Handwerk has not provided evidence that the line was negligently installed is therefore without merit.

For these reasons, the court will adopt the recommendation of Magistrate Judge Methvin and overrule UGI's partial objections.

## B. **Handwerk's Partial Objections**

Handwerk seeks in its cross-claim against UGI damages in excess of $200.00 for a truck damaged in the explosion, and damages in the amount of $14,809.13 for expenses incurred as a result of the explosion, including additional work and costs associated with the emergency response to the accident. (Doc. 12 at 5). UGI seeks summary judgment with regard to the $14,809.13 on the grounds that recovery is barred by the economic loss doctrine. In her Report, Magistrate Judge Methvin agreed, recommending that the court grant UGI's motion for summary judgement with respect to this claim for damages. (Doc. 63 at 14-16). Handwerk filed a partial objection to this recommendation.

The economic loss rule generally bars recovery for negligent acts causing purely economic loss and no property damage. Aikens v. Baltimore and Ohio R. Co., 501 A.2d 277, 278-79 (Pa. Super. 1985) (citing Robins Dry Dock and Repair Company v. Flint, 275 U.S. 303, 309 (1927)); see also REM Coal Co. v. Clark Equipment Co., 563 A.2d 128 (Pa. Super. 1989). "[W]here the negligence does not result in physical harm, thereby providing no basis for an independent tort, and the plaintiff suffers only pecuniary loss, he may not recover" for his economic damages.

17

Getty Refining and Marketing Co. v. MT FADI B, 766 F.2d 829, 833 (1985).  And, even when a plaintiff *does* suffer some physical harm to his person or property, he may only collect damages for "economic loss[es] which arise directly from the underlying physical damage."  *In re* Oriental Republic of Uruguay, 821 F. Supp. 934, 938 (D. Del. 1993).

Magistrate Judge Methvin reasoned that, even though Handwerk alleges property damage to its truck, the losses flowing from additional work and costs incurred as a result of the explosion were not causally connected with the property damage, and therefore are barred from recovery.  Handwerk argues that Magistrate Judge Methvin improperly read a requirement that the economic loss bear some causal connection with the physical damage in order to be recoverable, a requirement that Handwerk believes has never been adopted by courts in Pennsylvania.  However, in Aikens, the Pennsylvania Superior Court adopted the rule articulated in § 766(c) of the RESTATEMENT (SECOND) OF TORTS, see 501 A.2d at 279, which states: "One is not liable to another for pecuniary harm *not deriving from physical harm to the other . . . .*" RESTATEMENT (SECOND) OF TORTS § 766(c) (1977) (emphasis added); see also Getty Refining, 766 F.2d at 831-33.  The language of the Restatement clearly implies not simply the existence of property damage, but that there be some nexus between the property damage and the economic loss.  The court therefore finds that Handwerk's argument that there need not be a causal connection between property damage and economic loss for the economic damages to be recoverable to be without merit.

Handwerk argues in the alternative that, even if the court finds that there must be a causal connection to recover for economic losses, there remain disputed issues of material fact as to what economic damages flow directly from its damaged property. On this point, the court agrees. Handwerk has argued that they incurred increased work expenses partially as a result of the damage to their vehicle caused by the explosion. (Doc. 67 at 4). Determining what, if any, economic damages were derived from this property damage is a factual question that is inappropriate for resolution on summary judgment, and must be submitted to a jury. The court therefore declines to adopt Magistrate Judge Methvin's recommendation on this issue.

**III.** **Conclusion**

For the aforementioned reasons, the Report and Recommendation of Magistrate Judge Methvin is adopted in part and rejected in part. An appropriate order will issue.

       _S/ Christopher C. Conner_
CHRISTOPHER C. CONNER
United States District Judge


Dated:     November 28, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY** | : | **Civil Action No. 1:10-cv-617** |
| **as subrogee of Fulton Financial** | : | |
| **Corporation,** | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HANDWERK SITE CONTRACTORS,** | : | |
| **UGI CORPORATION, and** | : | |
| **UGI UTILITIES, INC.** | : | |
| **Defendants,** | : | |

## <u>ORDER</u>

AND NOW, this 28th day of November, 2012, upon consideration of the

Report and Recommendation (Doc. 63) filed by Magistrate Judge Methvin, and the

partial objections filed by defendants Handwerk Site Contractors ("Handwerk")

(Doc. 66), and UGI Corporation and UGI Utilities (collectively, "UGI") (Doc. 64), and

for the reasons discussed in the accompanying memorandum, it is hereby

ORDERED that:

1. The Report and Recommendation are ADOPTED in part and
   REJECTED in part, as follows:

   a. The Recommendation that Handwerk's cross-claim against UGI
      for economic losses be dismissed is REJECTED.

   b. The Recommendation that UGI's motion for summary judgment
      be denied in all other respects is ADOPTED.

2. UGI's Motion for Summary Judgment (Doc. 32) is DENIED in its entirety.

3. A revised scheduling order shall issue by future order of the court.

         S/ Christopher C. Conner
         CHRISTOPHER C. CONNER
         United States District Judge