**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** | : | **CIVIL ACTION NO. 1:10-cv-00617** |
| as subrogee of **FULTON FINANCIAL** | : | |
| **CORPORATION** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **HANDWERK SITE CONTRACTORS,** | : | |
| and **UGI UTILITIES, INC.** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is the motion in limine of defendant Handwerk

Site Contractors ("Handwerk") to preclude defendant UGI Utilities, Inc. ("UGI")

from offering expert testimony (Doc. 73), to exclude or limit the testimony of

Thomas Lloyd (Doc. 75), Robert Gordon (Doc. 76), John Little (Doc. 78) and Neil

Brennan (Doc. 78), and to exclude the UGI Manual of Standard Procedures § 4.3.6.

(Doc. 80). Also before the court is the motion in limine of defendant UGI to preclude

the use of the UGI Manual of Standard Procedures § 4.1.3. (Doc. 83). The facts of

this case have been thoroughly addressed in other memoranda and orders from this

court, and will be reiterated only to the extent necessary to dispose of the matters at

hand. The instant motions have been fully briefed and are ripe for disposition. The

court will address them *seriatim*.

## I. Handwerk's Motion in Limine to Preclude UGI from Offering Expert Testimony at Trial

### A. Violation of Rule 26(a)(2)

Handwerk has moved to preclude defendant UGI from offering expert testimony at trial. (Doc. 73). Handwerk asserts that UGI failed to serve expert reports or identify expert witnesses pursuant to Federal Rules of Civil Procedure 26(a)(2)(A)-(D), and is therefore precluded from offering expert testimony at trial. (Doc. 74 at 3). UGI concedes that it did not provide opposing counsel with expert reports, and the company does not oppose this motion "to the extent that it merely seeks to preclude expert testimony from one retained or specially employed in connection with this matter." (Doc. 87 at 2). However, UGI "reserves" the right to call its own employees to testify at trial, "some of whom may qualify as an expert in areas relevant to the instant matter." (Id.)

Rule 26(a)(2) requires litigants to disclose the identity of any individual who may provide expert testimony pursuant to Federal Rules of Evidence 702, 703, or 705. See FED. R. CIV. P. 26(a)(2)(A). Parties must also submit written reports prepared by such witnesses who are "retained or specially employed to provide expert testimony" or "whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). All others must disclose the subject matter of their expert testimony and a summary of the facts and opinions to which the witness is expected to testify. FED. R. CIV. P. 26(a)(2)(C).

The Federal Rules of Evidence do not distinguish "between expert and lay *witnesses*, but rather between expert and lay *testimony*." FED. R. EVID. 701 (2000 Advisory Committee Notes)(emphasis in original); see also Collins v. Prudential Inv. & Ret. Servs., 119 Fed. Appx. 371 (3d Cir. 2005)(unpublished opinion). It is the content of a particular witness's testimony, not his or her qualifications or terms of retention, that triggers the disclosure requirements of Rule 26(a)(2). FED. R. EVID. 701 (2000 Advisory Committee Notes)("any part of a witness' testimony that is based on scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules"). Consequently, in the case at hand, UGI's argument that its potential employee witnesses are not experts "retained or specially employed in connection with this matter" is misplaced. If UGI had intended to provide expert testimony at trial under Rule 702, it was incumbent upon UGI to disclose at least their identities to the opposing parties prior to the deadlines established by the court under Rule 26(a)(2)(A). That certain employee witnesses were not specially retained or employed for purposes of this case is significant only to determine whether UGI had a responsibility to submit written reports under Rule 26(a)(2)(B) or merely the subject matter of their testimony and the facts and opinions on which it is based under Rule 26(a)(2)(C). In this light, UGI appears to have misapprehended its Rule 26 obligations.

**B.    Appropriate Sanction**

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that a party who fails to comply with Rule 26(a)'s requirements is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The non-producing party has the "burden of proving substantial justification or that its failure to produce was harmless." Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002). Substantial justification for the failure to make a required disclosure has been regarded as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. United States v. Dentsply Intern., Inc., 2000 U.S. Dist. LEXIS 6994 at *7 (D. Del. 2000). Failure to comply with Rule 26(a) is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." Klatch-Maynard v. Sugarloaf Tp., 2011 U.S. Dist. LEXIS 54679 at *2 (M.D. Pa. 2011). UGI has not presented any evidence or argument on these issues.

The imposition of sanctions for abuse of discovery is a matter within the discretion of the trial court. Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995). The Third Circuit has instructed district courts weighing this decision to consider the following factors in exercising its discretion to exclude expert testimony: "(1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified; (2) the ability of that party to cure the

4

prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the district court's order"; and (5) the importance of the excluded testimony. Klatch-Maynard, 2011 U.S. Dist. LEXIS 54679 at *3 (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985)). The Third Circuit has also cautioned that excluding evidence is an "extreme sanction" for a violation of a discovery order. *In re* TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999).

In the matter at bar, such an evaluation is premature. Neither Handwerk nor UGI have identified the employee witnesses who may provide expert testimony on behalf of UGI at trial. Handwerk seeks merely to foreclose, in the abstract, this possibility. Absent precise information regarding the identities of UGI witnesses who may provide expert testimony, and the content of that testimony, the court is unable to thoroughly weigh the Meyers factors. For example, the court has no record upon which to assess either (1) the importance of any potential expert testimony from UGI's witnesses, or (2) its prejudice to Handwerk and Federal Insurance. Consequently, the court denies Handwerk's motion in limine to preclude defendant UGI from offering expert testimony without prejudice. To the extent that UGI employees do testify on the basis of scientific, technical, or other specialized knowledge within the scope of Rule 702, the court will revisit the issue in the

context of an appropriate record. UGI will be directed to make a thorough proffer prior to the submission of any expert testimony.

## II.     Handwerk's Motion in Limine to Exclude or Limit the Testimony of Thomas Lloyd

Handwerk seeks to exclude or limit the testimony of Thomas Lloyd, a field investigator with the Pennsylvania Department of Labor and Industry, Bureau of Labor Law Compliance. (Doc. 75). Plaintiff Federal Insurance has indicated that it may call Lloyd to provide expert testimony as to whether Handwerk violated the Pennsylvania One Call Act. Handwerk argues that Lloyd does not possess sufficient qualifications to provide expert opinion testimony pursuant to Federal Rule 702 of the Federal Rules of Evidence. (Doc. 82 at 4). Handwerk also asserts that Lloyd should not be allowed to present lay testimony pursuant to Federal Rule of Evidence 701, because Lloyd has no first-hand knowledge of Handwerk's activities with respect to the One Call Act. For the following reasons, the court will deny this motion.

### A.     Expert Testimony of Thomas Lloyd

Admissibility of expert testimony is a question of law governed by the Federal Rules of Evidence. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588-89 (1993). The trial judge acts as a "gatekeeper" and determines the admissibility of expert testimony. See Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert
> by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise,
> if (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles
> and methods reliably to the facts of the case.

FED. R. EVID. 702. See also Calhoun, 350 F.3d at 321 (explaining that the Rule 702 requirements constitute "the 'trilogy of restrictions on expert testimony: qualification, reliability and fit'")(quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). Nevertheless, Rule 702 embraces a "liberal policy of admissibility," Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008), in which "the rejection of expert testimony is the exception rather than the rule," FED. R. EVID. 702 (Advisory Committee Notes).

With respect to expert qualifications, the Third Circuit has held that a "broad range of knowledge, skills, and training qualify an expert as such" and has "eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)); see also Lauria v. AMTRAK, 145 F.3d 593, 598 (3d Cir. 1998). The rule contemplates a broad definition of the term "expert" and includes within the scope of the rule "not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values." FED. R. EVID. 702 (Advisory Committee Notes).

Handwerk argues that Lloyd does not possess the qualifications necessary to render an expert opinion on Handwerk's compliance with the One Call Act on the grounds that he lacked experience and training in the law generally, and as applied to a gas explosion. (Doc. 82 at 6)("Essentially, he was a rookie. All Mr. Lloyd possesses is a title with a government agency . . . ."). It challenges the sufficiency of Lloyd's five-year tenure with the Department of Labor and Industry, his training there, and his experience (or lack thereof) with gas explosions prior to the incident in question. (Id.)

Handwerk's objections are untenable under the liberal standard of Rule 702. At the time of the accident, Lloyd had been employed by the Department of Labor and Industry, Bureau of Labor Law Compliance for approximately five years. During that time, Lloyd had primary responsibility over the investigations of One Call Act incidents for a three-county area in central Pennsylvania. His supervisor, Lou Beemer, trained Lloyd in the Pennsylvania One Call Act, by reviewing the statutory provisions and training in the field. (Doc. 82 at 5). The Federal Rules of Evidence do not require that an expert be the "most" qualified. The Third Circuit has held:

> [I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate. We have held that witnesses . . . can qualify as experts under Rule 702 on the basis of practical experience alone, and a formal degree, title, or educational specialty is not required.

8

<u>Lauria</u>, 145 F.3d 593, 598-99 (internal citations omitted). Hence, there is no question that Lloyd possesses sufficient qualifications to present expert testimony under Rule 702. Handwerk's contentions go not to the admissibility of the testimony, but to its weight, and defendant is free to cross-examine Lloyd with respect to his qualifications and experience.

Handwerk also alleges deficiencies in Lloyd's investigation, claiming that Lloyd's conclusions were based on "erroneous facts." (Doc. 82 at 3).[1] It specifically objects to two of Lloyd's conclusions. First, Handwerk questions Lloyd's conclusion that only one pass of the backhoe was necessary to remove macadam at the time of the incident. (Doc. 82 at 6). It suggests that the size of the bucket renders this task impossible with fewer than two passes. (<u>Id.</u>). Handwerk argues that Lloyd's conclusion was based only on his observations and not actual measurements at the scene of the accident and is therefore unreliable. (<u>Id.</u>). Second, defendant objects to Lloyd's conclusion that, when the accident occurred, the subject backhoe was engaged in the act of removing ballast, rather than macadam. (<u>Id.</u> at 6-7). Handwerk does not explain why this conclusion is erroneous, only that it is. (<u>Id.</u>) (stating "in reality it was being used to remove macadam"). Clearly, these objections go to the weight of Lloyd's testimony, and not its admissibility.

─────────────

[1] Handwerk avers that its objections to Lloyd's investigation are not objections to reliability under <u>Daubert</u>. (Doc. 103 at 3)("[s]imply reading Handwerk's Motion shows that it is not a <u>Daubert</u> motion"). Nevertheless, such objections necessarily fall within the ambit of <u>Daubert</u> and the court will address them accordingly.

An expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable. <u>Paoli</u>, 35 F.3d 717 at 742; <u>see also</u> <u>Daubert</u>, 509 U.S. at 588. However, a judge "should not exclude evidence simply because he or she thinks that there is a flaw in the expert's investigative process which renders the expert's conclusions incorrect. The judge should only exclude evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." <u>Paoli</u>, 35 F.3d at 746. Hence, the focus is not on the conclusions an expert draws, but on the methodology used to reach those conclusions. <u>See</u> <u>id.</u> at 744 ("[proponents of expert testimony] do not have to demonstrate to the judge . . . that the assessments of their experts are *correct*, they only have to demonstrate . . . that their opinions are reliable."). Here, Handwerk's two challenges to the reliability of Lloyd's investigation are conclusory and unsupported. With respect to both issues, Handwerk fails to provide any profound basis for refutation of Lloyd's observations and analysis, and therefore it has not demonstrated the fatal flaw necessary for exclusion of his testimony. Handwerk is free to cross-examine Lloyd regarding his qualifications and his conclusions, and to offer contradictory evidence.

### B.    Thomas Lloyd's Lay Testimony

Defendant Handwerk also argues that Lloyd should be precluded from offering lay opinion testimony on the grounds that he only arrived at the scene of the explosion after it had occurred and has no first-hand knowledge of the facts that

precipitated the accident. (Doc. 82 at 7). It specifically objects to Lloyd offering a lay opinion regarding Handwerk's compliance with the One Call Act. (Id.)

The court acknowledges the possibility that a witness may provide both lay and expert testimony in a single case. See FED. R. EVID. 701 (Advisory Committee Notes)(citing United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997)). However, insofar as Lloyd's lay opinion testimony would render an opinion on the same subject as his expert opinion testimony, i.e. whether Handwerk complied with the One Call Act, the court's decision *supra* to permit Lloyd to provide expert testimony on that subject renders this inquiry moot.

## III. Handwerk's Motion in Limine to Exclude the Testimony of Robert J. Gordon

Handwerk has moved to exclude the testimony of plaintiff's witness Robert J. Gordon, on the grounds that (1) his expert testimony invades the province of the jury in violation of Federal Rule of Evidence 704, and (2) is not necessary to assist the trier of fact under Rule 702. For the following reasons, the court will deny this motion.

### A. Expert Testimony Invading the Province of the Jury

Plaintiff Federal Insurance has indicated that it will call Robert J. Gordon, who is expected to testify that Handwerk violated the Pennsylvania One Call Act by using a backhoe to excavate above an underground gas pipe before the pipe was physically located. (Doc. 100 at 4). Gordon opines that contractors have a responsibility to locate marked utility lines before proceeding with full-scale

mechanized excavating, and he indicates that this work should be done by hand. (Id.) Gordon concludes that, as the party that struck and pulled the gas service line in question, Handwerk "bears primary responsibility" for the explosion at Rosie's East End Restaurant, though "UGI did not perform in an exemplary manner." (Doc. 77, Ex. 1 at 1, 5). Handwerk argues that his assignment of "primary responsibility" to Handwerk invades the province of the jury to apportion responsibility between multiple defendants. (Doc. 77 at 4).

Federal Rule of Evidence 704(a) states that "an opinion is not objectionable just because it embraces an ultimate issue." The rule "does not lower the bars so as to admit all opinions." Fed. R. Ev. 704 (Advisory Committee Notes). Rather, the rule works in conjunction with Rules 701 and 702, requiring opinions to be helpful to the trier of fact, and Rule 403, providing for the exclusion of evidence which wastes time. Id. According to the Advisory Committee Notes, "[t]hese provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." Id.

Gordon's conclusion that Handwerk bears "primary responsibility" falls appropriately short of telling the jury what result to reach. Should the jury embrace Gordon's testimony, it remains free to apportion responsibility however it sees fit. It may, for example, interpret "primary responsibility" to mean Handwerk is responsible for 51 percent of the plaintiff's damages, 100 percent of the plaintiff's damages, or any percentage in between. Moreover, the jury remains free to disagree with Gordon and register its disagreement by a finding of no fault on the part of

both defendants. Consequently, Gordon's testimony, on its own, does not violate Rule 704 of the Federal Rules of Evidence.

**B.     Expert Testimony to Assist the Trier of Fact**

Handwerk also challenges Gordon's testimony under Rule 702 of the Rules of Evidence. As noted above, Rule 702 imposes three substantive restrictions on the admission of expert testimony: qualifications, reliability and fit. See Paoli, 35 F.3d at 741-47. Here Handwerk challenges the "fit" between Gordon's analysis of the One Call Act and the facts of this case, alleging that Gordon has based his statements on unsupported speculation and his subjective interpretation of the evidence. (Doc. 77 at 6). In support of its position, Handwerk points to several portions of Gordon's testimony: (1) his opinion that Handwerk's backhoe operator, Logan, did not fully understand the requirements of the Pennsylvania One Call Act; and (2) his opinion that the pre-explosion depth of the underground gas pipe could not be determined with any degree of certainty because of the explosion and the events that led to it, and (3) his opinion that it is unlikely that a gas utility installed a coated/insulated gas service in any location where large rocks pressed directly against the pipe coating. (Doc. 77 at 6-7). The court will address each of these in turn.

Under Rule 702, parties may use an expert to provide the trier of fact with an explanation of scientific or other principles that are relevant to the case, and leave it to the trier of fact to apply those principles to the facts of the case. FED. R. EVID. 702 (Advisory Committee Notes). Expert witnesses may also testify to their opinions, reached as a result of their own application of scientific, technical, or other

otherwise specialized knowledge to the facts of the case. Id. In the instant case, Gordon has been called as an expert on the Pennsylvania One Call Act to offer an opinion of its requirements as well as the parties' compliance therewith.

On page two of his report, Gordon opines that Handwerk's backhoe operator, Michael Logan, "appears to have always operated under the impression that, should he strike a utility line within 10" or 16" of the surface, the utility company was responsible for the consequences. His conclusion is erroneous." (Doc. 77, Ex. 1 at 2). Handwerk argues that Gordon's statement is not based on Logan's testimony, but on Gordon's subjective interpretation of Logan's understanding. UGI counters that Gordon's testimony is explicitly based on Logan's deposition testimony. As an expert on the One Call Act, Gordon may testify as to its requirements and indeed, render an opinion as to whether Handwerk and its employees satisfied those requirements in this case. However, Gordon's interpretation of Logan's understanding of the One Call Act may result in assigning unsubstantiated beliefs to Logan and may invade the province of the jury to make credibility determinations. See, Brill v. Marandola, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008). The parties have noticed Logan as a potential witness in this case, and are free to question him with respect to his understanding. Nevertheless, Gordon will not be permitted to posit an independent interpretation of Logan's beliefs. To be clear, Gordon is limited merely to the extent that he infers what the other witness was thinking and renders an opinion on that inference.

Handwerk also objects to Gordon's statement that "[t]he actual depth of the gas service both when it was installed and as it existed at the time of this incident are impossible to determine definitively." It argues that this statement is inconsistent with Gordon's later conclusion that UGI was not out of compliance with regulations regarding the depth at which gas service lines must be buried and reflects subjective speculation. (Doc. 77 at 7). Taken in context, however, it is clear that Gordon's conclusion is based on factual evidence. Gordon cites to 49 CFR § 192.361, which states that when a service line cannot be installed at the depths set forth in the applicable regulations because of an underground structure, the line need only be able to withstand anticipated external loads. Gordon then opines that UGI was therefore not out of compliance by burying a pipe at less than the prescribed depths because an underground structure prevented installation at standard depths. (Doc. 100 at 8). This testimony represents an appropriate opinion on how the law may apply to the anticipated factual record.

Finally, Handwerk objects to Gordon's opinion that "In my experience, I consider it unlikely that a gas-utility installed a coated/insulated gas service (such as the gas service line feeding the property at 300 E. Main Street) in any location where large rocks – like ballast – pressed directly against the pipe coating." (Doc. 77 at 7). Handwerk asserts that this statement is merely a subjective belief. It is clear that Gordon's statement is an opinion based on his extensive professional experience with gas utilities and specialized knowledge of the field, which he then

(rather tangentially) applies to the facts of this case.[2] Such testimony as to industry practice is likely to assist the jury in assessing the pertinent standard of care by which UGI had a responsibility to abide. The court will therefore deny Handwerk's request to exclude such testimony.

## IV. Expert Testimony of John Little and Neil Brennan

Handwerk has also moved (Doc. 78) to exclude the testimony of plaintiff's witnesses John Little and Neil Brennan. Little and Brennan were expected to testify on the issue of damages to Fulton Financial Corporation's as a result of the explosion and fire at Rosie's East End Restaurant. Handwerk alleges that Federal Insurance failed to comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a) insofar as it failed to disclose the facts about which Little and Brennan would testify. (Doc. 79 at 4-5).     Handwerk also argues that Little's

---

[2] In context, Gordon's full opinion is:

> Utilities nationwide have gone to great pains for decades to teach their foremen, laborers, and cathodic protection groups that it is imperative to protect the coating on steel pipe from mechanical damage. In my experience, I consider it unlikely that a gas-utility installed a coated/insulated gas service (such as the gas service line feeding the property at 300 E. Main Street) in any location where large rocks – like ballast – pressed directly against the pipe coating. To protect gas pipe from mechanical damage by rocks and other damaging material in backfill, it has been the practice for many years in the utility industry to backfill with screenings around new and replacement gas main and service installations.

(Doc. 77, Ex. 1 at 3).

testimony would invade the province of the jury by rendering an opinion as to the credibility of other witnesses. (Id. at 5).

On April 8, 2013, counsel for Federal Insurance, Handwerk, and UGI convened for jury selection in the upcoming trial. At that time, counsel notified the court that the parties had collectively reached an agreement on the issue of damages and would so stipulate. Plaintiff's counsel asserted that neither Little nor Brennan would be testifying as a result. The court therefore denies as moot defendant Handwerk's motion to exclude their testimony.

**V.    Cross-motions to Exclude Sections of the UGI Manual of Standard Procedure**

Handwerk and UGI have filed cross-motions to exclude sections of the UGI Manual of Standard Procedure ("MSP") relating to the depth at which gas service lines are to be installed. Handwerk moves (Doc. 80) to exclude MSP § 4.3.6 (1974), arguing instead that UGI is bound by MSP § 4.1.3 (2006). UGI in turn moves (Doc. 83) to exclude MSP § 4.1.3, insisting that § 4.3.6 is the section relevant to the present matter.

On May 5, 2010, Handwerk served its interrogatories and requests for production on UGI in the related state court matter, UGI Utilities, Inc. v. Handwerk Contractors, et al., Dauphin County CCP No. 2010-CV-1519-CV (formerly Berks County CCP No. 09-13108). Therein, Interrogatory No. 7 asked UGI to identify all policies and procedures in force when the gas line was installed in 1975, and when

the incident occurred on May 21, 2008. (Doc. 81 at 3).[3] Initially, UGI was unable to

locate a copy of the MSP daing back to the installation of the subject gas line in

1975. (Doc. 86 at 2). When it responded to Interrogatory No. 7, UGI inadvertently

and mistakenly identified UGI MSP § 4.1.3 as applicable both at the time the line

was installed and on May 21, 2008. (Id.) Timothy Pramik of UGI verified UGI's

responses on July 26, 2010. (Doc. 81 at 4). On August 10, 2010, UGI produced the

same materials in the instant matter as part of its initial disclosures pursuant to

Federal Rule of Civil Procedure 26(a)(1). (Id.). Fact discovery in this matter ended

on March 31, 2011.

On April 14, 2011, UGI filed a motion for summary judgment (Doc. 32).

Handwerk opposed that motion, arguing in part that UGI had failed to comply with

its own internal procedures regarding gas line depth, namely § 4.1.3, when it

installed the subject gas line in 1975. (Doc. 86 at 3). Handwerk also served UGI with

expert reports concluding the same. (Doc. 81 at 3). Only in this context did UGI

realize the incongruousness of Handwerk's allegation that, when installing a gas

line in 1975, it had failed to comply with a 2006 policy. Accordingly, it performed

another search of its internal materials and successfully located a copy of its MSP

dating back to 1974. (Doc. 86 at 3). UGI took from that version a copy of the

provision pertaining to gas line depth, § 4.3.6 (1974). (Id.). UGI avers that it promptly

provided to Handwerk a copy of § 4.3.6, including an affidavit from Pramik

---

[3] In its requests for production, Handwerk also asked UGI to provide copies
of those policies and procedures. (Doc. 81 at 3-4).

explaining that UGI had erroneously identified the 2006 policy as the applicable

provision at the time of the gas line's installation in 1975 (Id.). At that time, UGI also

filed its motion in limine to exclude § 4.1.3 as the provision applicable at the time of

the line's installation. Handwerk then filed its motion to exclude § 4.3.6 on the

grounds that it had justifiably relied on UGI's production of § 4.1.3, and that

permitting UGI to introduce § 4.3.6 would confuse the jury and prejudice

Handwerk. (Doc. 81 at 7-8).

Handwerk argues that the admission of § 4.3.6 would lead to litigation of a

collateral issue at trial, confusing the jury. According to Handwerk, the policy

should be excluded pursuant to Federal Rule of Evidence 403. See FED. R. EV. 403

("The court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing

the issues, misleading the jury . . . ."). Handwerk emphasizes the differences in the

titles of the two policies ("Trenching and Cover Requirements" in § 4.3.6, and

"Cover Requirements" in § 4.1.3), the difference in the policy numbers, and

differing issue dates. The court has carefully reviewed the purported discrepancies.

The change in title does not appear to be material, particularly considering that

parties are concerned about the relevant policy regarding cover requirements,

which is reflected in both policies' titles. Similarly, the change in policy numbers

could be a result of many factors, not least of which is UGI's explanation that the

MSP underwent renumbering and revision between 1974 and 2006. The court is

therefore unmoved by Handwerk's allegations regarding the relationship between §

4.3.6 and § 4.1.3. The collateral issue of whether § 4.3.6 is an earlier version of § 4.1.3 does not prove or disprove UGI's compliance with either. The relevant inquiry is whether § 4.3.6 was the internal procedure respecting the depth of gas service lines at the time of installation in 1975, and whether § 4.1.3 was the applicable protocol in 2006. Assuming a proper foundation is laid, the court finds that admitting § 4.3.6 is reasonable and appropriate under the balancing requirements of Rule 403. Moreover, the concern over the trial of a collateral issue is easily remedied by the exclusion of § 4.1.3 with respect to the installation of the gas line in 1975.

Handwerk also argues that its preparation has been prejudiced, insofar as it justifiably relied on UGI's assurances that § 4.1.3 was the applicable policy in 1975, and it was unable to take the deposition of Pramik or seek production of the entire MSP. (Doc. 81 at 10). There is no question that Handwerk was justified in its reliance on § 4.1.3 *prior to* UGI's production of § 4.3.6. However, UGI amended its disclosure shortly after the close of discovery,[4] and well before the start of trial. It is true that Handwerk did not become aware of § 4.3.6 until after the close of discovery. However, Handwerk has had notice of the applicable procedure for almost two years. It never availed itself of the court in an attempt to secure additional discovery. This is not a last minute disclosure. It is a late disclosure with

---

[4] The exact date on which UGI provided Handwerk with § 4.3.6 is not clear, though it must have been between the close of discovery on March 31, 2011, and May 26, 2011, when UGI filed its accompanying motion in limine to exclude § 4.1.3 for the first time.

ample opportunity to cure any potential prejudice. Handwerk cannot now complain of prejudice in light of its own inaction.

For all of these reasons, the court will grant UGI's motion to exclude § 4.1.3 with respect to the installation of the subject gas line in 1975.

## VI. Conclusion

For the foregoing reasons, the court will deny Defendant Handwerk's motion (Doc. 73) to preclude defendant UGI from offering expert testimony and its motion (Doc. 75) to exclude or limit the testimony of Thomas Lloyd. The court grants Handwerk's motion (Doc. 76) to exclude the testimony of Robert Gordon to the extent that such testimony includes inferences as to the beliefs of other witnesses; it denies the motion as to Handwerk's remaining objections. The court denies as moot Handwerk's motion (Doc. 78) to exclude the testimony of John Little and Neil Brennan. Finally, the court denies Handwerk's motion (Doc. 80) to exclude UGI Manual of Standard Procedures § 4.3.6 and grants UGI's motion (Doc. 83) to preclude use of UGI Manual of Standard Procedures § 4.1.3 as it pertains to the installation of the subject gas line. An appropriate order follows.

                              S/ Christopher C. Conner
                            CHRISTOPHER C. CONNER
                            United States District Judge

Dated:       April 15, 2013

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY,** | : | **CIVIL ACTION NO. 1:10-cv-00617** |
| as subrogee of **FULTON FINANCIAL** | : | |
| **CORPORATION** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **HANDWERK SITE CONTRACTORS,** | : | |
| and **UGI UTILITIES, INC.** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 15th day of April, 2013, upon consideration of the motions in

limine (Docs. 73, 75, 76, 78, 80) of Handwerk Site Contractors, and the motion in

limine of UGI Utilities (Doc. 83), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.  Handwerk's motion in limine (Doc. 73) to preclude defendant UGI
    from offering expert testimony is DENIED without prejudice;

2.  Handwerk's motion in limine (Doc. 75) to exclude or limit the
    testimony of Thomas Lloyd is DENIED;

3.  Handwerk's motion in limine (Doc. 76) to exclude the testimony of
    Robert Gordon IS GRANTED in part, and DENIED in part:

    a.  The motion is GRANTED to the extent that Gordon's testimony
        includes inferences as to the beliefs of other witnesses;

    b.  The motion is DENIED as to Handwerk's remaining objections;

4.     Handwerk's motion in limine (Doc. 78) to exclude the testimony of John Little and Neil Brennan is DENIED as moot;

5.     Handwerk's motion in limine (Doc. 80) to exclude UGI Manual of Standard Procedures § 4.3.6 is DENIED; and

6.     UGI's motion in limine (Doc. 83) to preclude use of UGI Manual of Standard Procedures § 4.1.3 is GRANTED as it pertains to the installation of the subject gas line.


                                       <u>S/ Christopher C. Conner</u>
                                         Christopher C. Conner
                                         United States District Judge